

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 20, 2020

**BY ECF**
The Honorable Valerie E. Caproni
United States District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States* v. *Sekhou Toure*, 19 Cr. 808 (VEC)

Dear Judge Caproni:

The Government submits this letter in advance of the sentencing of defendant Sekhou Toure, currently scheduled for September 3, 2020, at 2:30pm. For the reasons set forth below, the Government believes that a sentence within the Guidelines recommended range of 18 to 24 months' imprisonment is sufficient but not greater than necessary to serve the legitimate purposes of sentence.

**A.  Factual Background**

This case arises from the defendant's role in a scheme to steal thousands of rent subsidy checks from the New York City Human Resources Administration ("HRA"), deposit those checks, and then withdraw cash.

The HRA issues subsidy checks to provide rent assistance to low-income New Yorkers (the "HRA Supplement Checks"). Presentence Investigation Report ("PSR") ¶ 14.  For individuals who qualify, HRA mails supplement checks to landlords to cover a portion of the cost of rent or storage expenses. *Id.* However, when checks are undeliverable, they are returned to a post office box in Manhattan (the "HRA P.O. Box"). *Id.* ¶ 16. From there, the undeliverable checks were picked up by a private courier company, which employed co-defendants Issiaga Sylla and Salifou Conde, and taken back to HRA's office. *Id.*

Between approximately August 2016 and August 2019, more than 3,000 HRA Supplement Checks, worth approximately $2.7 million, were deposited into more than 50 bank accounts controlled by Toure and his co-conspirators. *See id.* ¶ 13; Complaint ¶ 18. Two of those accounts were Toure's personal bank accounts. *See* PSR ¶ 18-21. Between June 29, 2018, and August 17, 2018, thirty-seven HRA Supplement Checks, worth approximately $26,655.44, were deposited into Toure's account at Bank of America. *Id.* ¶ 18. Bank records show that during the relevant time period, one stolen HRA Supplement Check was deposited approximately each day, and then the following day there was a cash withdrawal in the approximate amount of the stolen check from the day before. During the same time period when stolen HRA Supplement Checks were being

deposited into the account, bank surveillance photographs show Toure withdrawing a total of $2,450 across six transactions. *Id.* ¶ 19. Bank surveillance photographs also show co-defendant Issiaga Sylla depositing seven stolen HRA Supplement Checks and withdrawing cash five times, and an uncharged co-conspirator depositing one stolen HRA Supplement Checks and withdrawing cash one time. *See id.* ¶ 20.

Bank records show that Toure's bank account at TD Bank was also used to deposit stolen HRA Supplement Checks and then withdraw the cash value of the checks. *Id.* ¶ 21. Specifically, from approximately May 1, 2018, to May 31, 2018, twenty stolen HRA Supplement Checks were deposited into Toure's TD Bank account, worth approximately $11,694.14. *Id.*

On May 6, 2020, pursuant to a plea agreement, Toure pleaded guilty to Count Two in the Indictment, charging one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. In his plea agreement (the "Plea Agreement"), Toure agreed to forfeit $56,079.48 and pay restitution in the amount of $56,079.48.

## B.  The Presentence Investigation Report

On July 29, 2020, the Probation Office filed the PSR. In the PSR, the Probation Office concurred with the Guidelines calculation outlined in the Plea Agreement. Based on a total offense level of 11 and a relevant criminal history category of IV, the Guidelines recommended sentence is 18 to 24 months' imprisonment and 2 to 5 years' supervised release. The Probation Office recommends a sentence of 18 months' imprisonment and 5 years' supervised release.

## C.  Discussion

### 1.  Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B)   to afford adequate deterrence to criminal conduct;

> (C)   to protect the public from further crimes of the defendant; and

> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2.   A Guidelines Sentence Is Warranted in This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the nature and circumstances of the offense, the history and characteristics of the defendant, and the provision of adequate deterrence to criminal conduct.

*First,* a Guidelines sentence is appropriate in light of the nature and circumstances of the offense. HRA's rent subsidy programs are aimed at helping low-income New Yorkers pay for housing. HRA's programs also help New Yorkers experiencing homelessness move out of shelters and into stable housing. *See* Rental Assistance, NYC.gov, https://www1.nyc.gov/site/hra/help/rental-assistance.page (last visited Aug. 20, 2020). The charged scheme involved stealing thousands of HRA Supplement Checks, depositing the checks, and then withdrawing the cash equivalent of the stolen checks. The fraud scheme could not have succeeded if Sylla and Conde had simply deposited the checks into their own accounts. Rather, the scheme extended for years because the defendants deposited the stolen checks into dozens of different accounts, including some that were opened using fake identification documents and others, like Toure's, that belonged to co-conspirators.

*Second*, a Guidelines sentence is necessary in light of the history and characteristics of the defense, namely his history of criminal convictions involving identity theft and forged instruments. This prior record of criminal activity, and its continuation in the events that led to the instant conviction, warrants a substantial term of imprisonment. In 2011, Toure was convicted for identity theft in the second degree and sentenced to one year imprisonment. PSR ¶ 51-53.  In 2012, Toure was convicted for attempted possession of a forged instrument in the second degree, and sentenced to 8 months' imprisonment. *Id.* ¶ 48. In light of these past convictions, Toure's instant offense appears to be more of the same. His previous sentences of one year's imprisonment and eight months' imprisonment were not enough to deter him from future criminal conduct. In addition to the fraud convictions in 2011 and 2012, the defendant was convicted in 2014 for assault in the third degree. The defendant committed the instant offense while on probation following his 2014 assault conviction. Given the defendant's history of fraud offenses and his non-compliance with supervision, a sentence within the applicable Guidelines range is warranted in this case.

*Third*, a Guidelines sentence is necessary to provide adequate deterrence of criminal conduct of this type. Schemes to defraud the City of New York are unfortunately widespread and difficult to detect. It is important to send a strong message that theft of this magnitude is not less serious of an offense merely because the perpetrator may feel able to justify his conduct based on the perceived lack of a specific individual victim. But every individual whose rent subsidy check was stolen out of the mails as part of this conspiracy likely suffered, at the very least, annoyance, anxiety, and loss of time and energy having to convince HRA that their check had been stolen. A sentence within the Guidelines recommended range will best ensure that the defendant is deterred from future fraudulent conduct and will similarly help deter others from this type of fraud.

In comparison with his co-defendants, Toure played a relatively contained role in the overall HRA check fraud scheme. Some of Toure's co-defendants stole HRA Supplement checks while acting as couriers (Sylla, Conde), some co-defendants deposited a large number of stolen checks into a number of different fraudulently created accounts (Sylla, Conde, Dukuray, Keita), and another co-defendant trafficked debit cards for the fraudulently created accounts (Bakayoko). Toure, however, appears to have only used two accounts, which were initially used for legitimate purposes and then later used for fraud. Nevertheless, the Government believes a Guidelines sentence is appropriate in this case. Although in some fraud cases the Guidelines loss amount may overstate the defendant's culpability, the loss amount relevant to Toure's Guidelines calculation is a conservative figure focused only on the conduct involving Toure's personal accounts. Even if his contained role in the scheme has some mitigating effect, his history of fraud offenses and his theft of money intended to benefit the most needy New Yorkers make a Guidelines sentence appropriate.

\* \* \*

For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines-recommended sentence of 18 to 24 months' imprisonment, which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: _____
Kedar S. Bhatia
Assistant United States Attorney
(212) 637-2465